[—— NYS2d ——]

CITY OF NEW YORK et al., Respondents, v LEAD INDUSTRIES ASSOCIATION, INC., et al., Appellants, et al., Defendant.

First Department, May 13, 1993

## APPEARANCES OF COUNSEL

*Philip H. Curtis* of counsel, New York City *(Otis Pratt Pearsall, Murray R. Garnick* and *William H. Voth* with him on the brief, *Arnold & Porter;* and *Donald A. Bright,* Los Angeles, California, attorneys), for Atlantic Richfield Company, appellant.

*Charles H. Moellenberg, Jr.,* of counsel, Pittsburgh, Pennsylvania *(Paul Michael Pohl* and *Richard P. Bress; Elaine H. Mandelbaum,* New York City, with him on the brief, *Jones, Day, Reavis & Pogue,* attorneys), for The Sherwin-Williams Company, appellant.

*G. Marc Whitehead* of counsel, Minneapolis, Minnesota *(Michael T. Nilan; Harold J. Engel* and *Joseph Brooks,* Washington, D.C., with him on the brief, *Popham, Haik, Schnobrich & Kaufman, Ltd.;* and *Michael P. Manning,* New York City, *Bachner, Tally, Polevoy & Misher,* attorneys), for SCM Corporation and another, appellants.

*Donald E. Scott* of counsel, Washington, D.C. *(Timothy S. Hardy* with him on the brief, *Kirkland & Ellis;* and *Daniel J. Kornstein,* New York City, *Kornstein Veisz & Wexler,* attorneys), for NL Industries, Inc., appellant.

*Mary Morrissey Sullivan,* Boston, Massachusetts *(Mark L. Sullivan* and *Richard L. Nahigian, Sullivan, Sullivan & Pinta;* and *H. Barry Vasios,* New York City, *Gilbert, Segall & Young,* attorneys), for Lead Industries Association, Inc., appellant.

*Fred Kolikoff* of counsel *(Larry A. Sonnenshein, Alan H. Kleinman* and *John R. Low-Beer* with him on the brief, *O. Peter Sherwood, Corporation Counsel* of New York City; and *Alan D. Aviles,* New York City, attorneys), for respondents.

## OPINION OF THE COURT

WALLACH, J.

Defendants are five major manufacturers of lead-based paint, and their industrial trade association. The surviving claims that are the subject of this appeal allege that the

manufacturers,* through the actions of their trade association, fraudulently misrepresented the safety of their product in the marketing of same (sixth cause of action), concealing their knowledge of its hazards; as a result, plaintiffs later had to expend considerable sums of money inspecting and abating these hazards, and treating the victims of lead poisoning, for which restitution is sought (fourth cause of action). Defendants also challenge the upholding of the general allegation of joint and several liability, particularly based upon theories of civil conspiracy and concert of action.

The danger that lead-based paint presents to human health and safety, especially with regard to children, is today virtually beyond debate. But even were the hazard debatable, insofar as these motions to dismiss rest in part upon failure to state a cause of action, the allegations must be deemed true *(Morone v Morone,* 50 NY2d 481; *Ippolito v Lennon,* 150 AD2d 300, 302).

■ According to the complaint, defendants have known for years, from their own privately financed studies, that lead-based interior house paint presented a health threat, putting children particularly at risk. Despite their decision not to use such paint on toys and children's furniture, they nevertheless not only continued to manufacture lead-based paint for interior surfaces, but also concealed their knowledge of the hazard, suppressed its dissemination, and lobbied against governmental regulation that would have required appropriate warnings to the public. Indeed, well into the 1950's, having known of the hazard for three decades, defendants continued to advertise and promote their lead-based product as appropriate for uses which might result in exposure to young children through inhalation, ingestion or absorption. Armed with such knowledge, which was clearly superior to that of the consuming public, defendants cannot expect their actions to be protected as mere statements of opinion in an action for fraud and misrepresentation *(West Side Fed. Sav. & Loan Assn. v Hirschfeld,* 101 AD2d 380, *lv denied* 65 NY2d 605). Notwithstanding the fact that there is room under the First Amendment umbrella for "commercial speech", untruthful utterances, commercial or otherwise, have never been entitled to such protection *(Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748, 771).

---

* Defendant SCM Corporation is successor to defendant Glidden Company. Defendant Eagle-Picher Industries, now in bankruptcy, has not participated in this appeal.

■■ Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud *(Young v Robertshaw Controls Co.,* 104 AD2d 84, *appeal dismissed* 64 NY2d 885; *Angie v Johns Manville Corp.,* 94 AD2d 939).* It is important to note that defendants are alleged not simply to have marketed a product that failed, but rather to have led the public to believe in the safety of a product that defendants knew to be a health hazard, and to have engaged in a scheme that concealed this knowledge from the public, while at the same time actively resisting any governmental efforts to regulate the product through appropriate manufacturing controls or labeling requirements. So deceptive was this scheme that plaintiffs claim they did not learn of defendants' knowledge of the hazard until it was disclosed in litigation against these defendants in Massachusetts Federal court *(see, Santiago v Sherwin-Williams Co.,* 782 F Supp 186). Since plaintiffs cannot be shown conclusively to have had earlier knowledge of the fraud, their action was timely commenced in 1989 (CPLR 213 [8]; *Trepuk v Frank,* 44 NY2d 723).

■ In their fourth cause of action, plaintiffs seek restitution for their expenditures in abating the hazard, and treating its victims. Recovery under such a theory, at least with regard to the reasonable costs of abatement, is not novel (Restatement of Restitution § 115; *Unified School Dist. No. 500 v United States Gypsum Co.,* 788 F Supp 1173 [D Kan]; *Hebron Pub. School Dist. No. 13 v U.S. Gypsum,* 690 F Supp 866 [D ND]), and has been recognized in this State, notwithstanding any existing statutory duty on plaintiffs' part to treat the emergency when first discovered *(State of New York v Schenectady Chems.,* 103 AD2d 33; *City of New York v Keene Corp.,* 132 Misc 2d 745, *affd* 129 AD2d 1019). Defendants argue that plaintiffs never conveyed to them any intention to seek reimbursement for lead abatement efforts, but such intent to hold a wrongdoer liable can be inferred *(Nassr v Commonwealth,* 394 Mass 767, 477 NE2d 987).

■ Finally, we affirm plaintiffs' claim for joint and several liability on the theory of concert of action. The manufacturing defendants allegedly coordinated their efforts to conceal the hazard, to mislead the public and the government as to that hazard, and to market and promote the use of the product despite their knowledge of the hazard. "[I]f manufacturers cooperate to conceal product risk, and if the concealed risk subsequently causes injury, justice demands a remedy. The

concert of action theory rests upon this equity to justify joint and several liability against any manufacturer that substantially contributes to an injury by coordinating activity with other manufacturers to conceal information." *(Marshall v Celotex Corp.,* 652 F Supp 1581, 1582 [ED Mich].)

The manufacturing defendants accomplished this plan by allegedly having it propounded by their trade association, defendant Lead Industries Association. Each of the manufacturers thus became a principal, chargeable with the knowledge and conduct of its agent *(Farr v Newman,* 14 NY2d 183). Liability attaches equally to the trade association in its own right *(Vandervelde v Put & Call Brokers & Dealers Assn.,* 344 F Supp 118, 155 [SD NY]), and to all those who continued their membership without protest *(Phelps Dodge Ref. Corp. v Federal Trade Commn.,* 139 F2d 393, 396-397 [2d Cir]); all the more does liability reach those who actively participated in the scheme.

The orders of Supreme Court, New York County (Michael J. Dontzin, J.), entered December 26, 1991, to the extent they denied defendants' motions to dismiss the fourth and sixth causes of action as well as allegations of conspiracy and concert of action, should be affirmed, without costs.

ELLERIN, J. P., ASCH and RUBIN, JJ., concur.

Orders, Supreme Court, New York County, entered on December 26, 1991, which, *inter alia,* denied defendants' motions to dismiss the fourth and sixth cause of action as well as allegations of conspiracy and concert of action, affirmed, without costs and without disbursements.